UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARL CAVALIER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-656-JWD-RLB** |
| **THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, ET AL.** | |

## ORDER

Before the Court is Defendants' Motion to Stay Discovery. (R. Doc. 26). The motion is opposed. (R. Doc. 32). Defendants filed a reply. (R. Doc. 34).

**I.     Background**

On September 30, 2021, Carl Cavalier ("Plaintiff") initiated this action against the Department of Public Safety and Corrections ("DPSC").[1] Plaintiff later added Colonel Lamar A. Davis ("Davis") as a defendant in his Second Supplemental, Amending, and Restated Complaint ("Second Amended Complaint").[2] (R. Doc. 16). Plaintiff alleges that Defendants subjected him to retaliation/reprisal for exercising his 1st Amendment right. Particularly, in response to Plaintiff protesting the unlawful and racial discriminatory actions of the DPSC (including those involving the excessive force, assault, battery, and false imprisonment of Ronald Greene), Defendants threatened Plaintiff's job, placed him on forced annual leave, and ultimately fired him. (*See generally* R. Doc. 16). As a result, Plaintiff asserts a federal law retaliation claim against Davis pursuant to 42 U.S.C. § 1983 and a state law reprisal claim against the DPSC pursuant to La. R.S. 23:967.

---

[1] DSPC avers that Plaintiff "erroneously named and referred to [it] in the Petition as 'State of Louisiana: Department of Public Safety & Corrects: Public Safety Services; Office of State Police'"). (R. Doc. 1 at 1).
[2] DPSC and Davis are hereinafter collectively referred to as "Defendants."

On July 12, 2022, Defendants filed a motion to dismiss in which Davis raised the defense of qualified immunity with respect to the Section 1983 claims brought against him. (R. Doc. 25). The motion is currently pending before the district judge. Defendants simultaneously filed the instant to Motion to Stay Discovery in light of the qualified immunity defense. (R. Doc. 26). Defendants request a stay of all discovery, even as to the DSPC who is not asserting qualified immunity. (R. Doc. 26-1 at 1).

In opposing the Motion to Stay, Plaintiff argues that any stay of discovery should be limited only to Davis, and that discovery should proceed on Plaintiff's claims against the DPSC. (R. Doc. 32-3).

Plaintiff further argues that "good cause" exists pursuant to Federal Rule of Civil Procedure Rule 26(c) for bifurcating discovery as to the DPSC. (R. Doc. 32 at 5). According to Plaintiff, he was fired by the DPSC because of his whistleblowing activities related to the death of Ronald Greene. (R. Doc. 32 at 6). Davis, however, did not become Plaintiff's superintendent until well after the death of Ronald Greene, and therefore, the onset of Plaintiff's protected activities. (R. Doc. 32 at 5). Accordingly, Davis will not be a primary witness for the claims against the DPSC. Additionally, the claim against the DPSC is a reprisal claim, which can only be brought against an employer (and not Davis as superintendent). (R. Doc. 32 at 5). Plaintiff suggests that discovery against the DPSC will not require the participation of Davis because "Davis is only one (1) of forty (40) witnesses identified" by the DPSC "in its initial disclosure and more than approximately 75%+ of the documents listed fall during a period when Davis was not Superintendent." (R. Doc. 32 at 2). Finally, Plaintiff argues that the DPSC's history of "sanitizing" pertinent information concerning the death of Ronald Greene further supports the need to bifurcate discovery as to DPSC. (R. Doc. 32 at 6).

In *Henderson v. Bd. of Supervisors,* No. 21-297-JWD-RLB, 2022 WL 2654978 (M.D. La. July 8, 2022), this court considered a similar situation. Specifically, to what extent may discovery proceed prior to the court addressing the sufficiency of the pleadings in light of a defense of qualified immunity raised by a defendant in a Rule 12 motion. The Fifth Circuit's decision in *Carswell v. Camp,* -- F.4th --, 2022 WL 2186363 (5th Cir. 2022), as discussed below, addresses this issue. In addition, if another defendant does not raise such a defense, to what extent may discovery be bifurcated to allow discovery to proceed only with respect to that defendant. The plaintiff in *Henderson* (who is represented by the same attorney as Plaintiff in the instant matter) and Plaintiff here both argue that discovery can proceed against a co-defendant that has not raised a defense of qualified immunity. *Henderson,* 2022 WL 2654978 at *4.

Given the similar legal issues, the Court finds no reason to deviate from the law and analysis section set forth in *Henderson.*

## II.     Law and Analysis

### A.     Legal Standards

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc,* 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garret,* 571 F.2d 302, 3026 (5th Cir. 1990) (citation omitted).

"Trial courts possess broad discretion to supervise discovery." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990) (citation omitted). "A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987).

"The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit." *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)). Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Fifth Circuit has clarified that all discovery involving a defendant raising the defense of qualified immunity must be stayed until resolution of the defense of qualified immunity:

> The Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer must survive the motion to dismiss (and the qualified immunity defense) *without any* discovery. Our prior decisions to the contrary are overruled.

*Carswell*, -- F.4th --, 2022 WL 2186363, at *3 (expressly overruling *Lion Boulos v. Wilson*, 834 F.2d 504, 508–09 (5th Cir. 1987) and its progeny). In *Carswell*, the Fifth Circuit concluded that a district court abused its discretion by deferring its ruling on a motion to dismiss on qualified immunity grounds and subjecting the public official defendants to discovery on the plaintiff's *Monell* claims, which created an undue burden in light of increased litigation costs and complications caused by bifurcated discovery. *Carswell*, 2022 WL 2186363, at *4-5. The Fifth Circuit expressly held that the required stay of discovery is not limited to claims to which the defense of qualified immunity is raised. *Id*.

In so ruling, the Fifth Circuit highlighted the Supreme Court's concerns about the burdens of litigation imposed on public officials. It also noted that these same burdens would be present if the Court allowed discovery to proceed against defendants in different capacities or against co-defendants that make no claim for qualified immunity:

> It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

*Carswell*, 2022 WL 2186363, at *4 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009)). "In other words, the Court ruled out even 'minimally intrusive discovery' against official defendants before a ruling that plaintiff had met his burden to overcome the qualified immunity defense at the pleading stage." *Carswell*, 2022 WL 2186363, at *4 (quoting *Iqbal*, 556 U.S. at 686).

B.     **Analysis**

Having reviewed the Second Amended Complaint, the pending motion to dismiss, and the arguments of the parties, the Court finds it appropriate to stay all discovery until resolution of the pending motion to dismiss.

As in *Henderson,* Plaintiff has brought nearly identical claims against both Defendants. Plaintiff attempts to distinguish the two by stating that the claim against the DPSC is a reprisal claim, which can only be brought against an employer. (R. Doc. 32-5). Plaintiff contends that "his employer DPSC harassed him, threatened him, forced him on leave, transferred him, stripped [him] of his job duties, denied him overtime, took his earned leave, suspended him, and terminated him." (R. Doc. 32 at 5). According to Plaintiff, discovery pertaining to the DPSC can

be bifurcated because the "majority of witnesses" to aforementioned claims against the DPSC, as his employer, are not Davis. (R. Doc. 32 at 5).

Plaintiff's argument, however, is unconvincing. The foundation of the reprisal claim is the same as Plaintiff's retaliation claim against Davis. To be certain, the crux of Plaintiff's claims is found in the following sentence:

> **As a result of [Plaintiff's] protected activities, [D]efendants took retaliation/reprisal against him, including but not limited to, retaliatory harassment, threatening his job, placing him on forced annual leave although [Plaintiff] was fit for duty and able to work, falsely accusing him of violating policy, stripping his significant and material job duties, transferring him to an undesirable position and department, reducing his ability to earn overtime pay, restricting his ability to accrue annual leave, suspending him for two hundred (200) hours, and ultimately, firing him for false reason(s).**

(R. Doc. 16 at 4) (emphasis in original). As illustrated, Plaintiff's allegations attribute the harmful conduct that he suffered to Defendants as a whole. Rarely, throughout the entirety of the Second Amended Complaint, does Plaintiff separate the actions of Davis and the DPSC.

Instead, the Second Amended Complaint makes clear that Davis was, as Defendants point out, the DPSC's acting agent. For example, Plaintiff alleges that "[a]t all times pertinent hereto, defendant Davis was an agent and employee of defendant DPSC and was [Plaintiff's] supervisor with immediate and successfully higher authority over his employment." (R. Doc. 16 at 2). According to Plaintiff, he "met with [D]efendants, through defendant Davis, regarding [Plaintiff's] protected activity." (R. Doc. 16 at 3). Additionally, "[D]efendants, through defendant Davis, 'ordered' the 'termination' of [Plaintiff]." (R. Doc. 16 at 8).

Moreover, despite Plaintiff's assertion that his protected activity began well before Davis became superintendent, the investigation of Plaintiff's protected activity, the alleged harmful conduct, and the ramifications of same did not occur until *after* Davis began his reign as superintendent. Particularly, the bulk of Plaintiff's Second Amended Complaint contains

allegations from February 5, 2021 (the day Plaintiff met with Davis to discuss his protected activity) through November 23, 2021 (the day Plaintiff received his termination letter, which was written by Davis). (*See* R. Doc. 16 at 3-8). Inevitably, as illustrated by Plaintiff's discovery requests, the bulk of discovery would pertain to Defendants' investigation of Plaintiff's protected activity and the damages he suffered as a result thereof. (*See generally* R. Doc. 32-4).

Accordingly, the underlying factual allegations against both Davis and the DPSC are so intertwined that allowing discovery to proceed solely against the DPSC would inherently, and inappropriately, require Davis to participate in the process. *Iqbal*, 556 U.S. at 68-65. ("Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery."). As a result, the "Court finds no plausible manner in which bifurcated discovery could proceed with respect to [the DPSC] without implicating, and unduly burdening," Davis. Therefore, the Court must stay all discovery until the resolution of Davis' qualified immunity defense.

### III.    Conclusion

**IT IS ORDERED** that Defendants' Motion to Stay Discovery (R. Doc. 26) is **GRANTED**, and discovery is **STAYED** until further order of the Court. The parties shall contact the undersigned after the resolution of the motion to dismiss addressing the issue of qualified immunity for the issuance of a new scheduling conference order.

Signed in Baton Rouge, Louisiana, on August 17, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**