UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CARL CAVALIER | CIVIL ACTION |
| VERSUS | NO. 21-656-JWD-RLB |
| STATE OF LOUISIANA: DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS: PUBLIC SAFETY SERVICES, ET AL. | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 24, 2023.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARL CAVALIER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-656-JWD-RLB** |
| **STATE OF LOUISIANA:**<br>**DEPARTMENT OF PUBLIC SAFETY**<br>**AND CORRECTIONS: PUBLIC**<br>**SAFETY SERVICES, ET AL.** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion to Enforce Settlement Agreement (R. Doc. 56). Plaintiff opposes the motion.

Also before the Court are Intervenor's Motion to Deem Privilege Waived (R. Doc. 77) and Intervenor's Consent Motion for Leave to Review Exhibits In Camera (R. Doc. 78).

Because Plaintiff entered into an enforceable compromise with Defendants, the Court recommends granting Defendants' motion and denying Intervenor's motions as moot.

**I.    Background**

Plaintiff, Carl Cavalier, allegedly settled his claims with Defendants Louisiana Department of Public Safety & Corrections (Office of State Police) ("LSP") and LSP Superintendent, Colonel Lamar Davis. Cavalier had asserted employment discrimination claims following his termination from the Louisiana State Police. (R. Doc. 1-2). The parties and their attorneys appeared at a judicial settlement conference before the undersigned. (R. Doc. 40). Following negotiations, the parties agreed to a settlement which resolved all of Plaintiff's claims. (*See id.*). That afternoon, counsel for the parties exchanged emails confirming the material terms of the settlement agreement. (R. Doc. 56-2). Based upon the parties' representations, the Court

dismissed the action subject to the right to reopen the case within sixty (60) days upon a showing of good cause if the settlement was not consummated. (R. Doc. 41).

One week after agreeing to a compromise at the judicial settlement conference, Plaintiff informed his counsel of his dissatisfaction with the agreement. (*See* R. Doc. 60-3). Shortly thereafter, Plaintiff sought to rescind the agreement and reopen this case. (R. Doc. 52).[1] Plaintiff asserts that he never actually agreed to the terms of the settlement and his attorney coerced him into accepting the settlement at the judicial conference. (R. Doc. 52-2 at 5). Specifically, Plaintiff alleges that his reemployment was a necessary term for any compromise. (R. Doc. 60 at 2). However, his attorney allegedly pressured him into accepting an agreement that did not reinstate his position by telling him that "he could not win at trial, nor could he win on appeal." (R. Doc. 52-2 at 8). Additionally, Plaintiff contests the settlement on the grounds that he had not authorized his attorney to enter into the agreement on his behalf. (*Id.* at 7). Plaintiff states that therefore the settlement is an unenforceable, oral agreement. Accordingly, Plaintiff obtained new counsel and moved to reopen the case and rescind the proposed settlement. (R. Docs. 51, 52).

Defendants opposed Plaintiff's motion and filed a counter Motion to Enforce Settlement Agreement (R. Doc. 56). Defendants assert that Plaintiff entered into a valid, oral compromise at the settlement conference. (R. Doc. 56-1 at 5). Plaintiff, and not counsel, personally assented to those terms at the conference. (R. Doc. 59 at 5). The parties confirmed all of the material terms of the agreement in writing in a subsequent email exchange. (R. Doc. 56-1 at 5). The parties, therefore, do not dispute any material facts. Defendants further assert that Plaintiff has not alleged any facts which legally constitute duress or otherwise invalidate the agreement. (R. Doc. 59 at 6). Any pressure to settle applied by Plaintiff's counsel does "not rise to the level of duress

---

[1] On January 3, 2022, the Court granted Plaintiff's Motion "to the extent it seeks to reopen this action to consider whether the settlement agreement is enforceable." (R. Doc. 71).

or undue influence." (*Id.* at 7). Therefore, they request that the Court enforce the agreement. (*Id.*).

Plaintiff's former counsel disputes Plaintiff's allegations and her law firm has filed a Complaint in Intervention (R. Doc. 74). She requests that the Court "recognize[s] and protect[s]" a lien on the proceeds from the compromise arising from the firm's written contingency fee agreement with Plaintiff. (*Id.* at 9).

## II. Legal Standards

A court may summarily enforce a settlement agreement when it has retained jurisdiction. *Richardson v. Famous Bourbon Mgmt. Grp., Inc.*, 857 F. App'x 182, 183-84 (5th Cir. 2021). "[A] a settlement agreement once entered into cannot be repudiated by either party." *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967). However, when a party disputes the validity of the settlement agreement, a court must hold an evidentiary hearing on any disputed issues affecting the validity or scope of the agreement. *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984); *see also In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015).

"[T]he construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally." *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (quoting *E. Energy, Inc. v. Unico Oil & Gas, Inc.*, 861 F.2d 1379, 1380 (5th Cir. 1988)); *see also Fla. Educ. Ass'n, Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973) (It is a "well-settled rule that the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally."). A suit to enforce a settlement is, in essence, "a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

375, 381 (1994). The facts regarding the breach of a settlement agreement are "quite separate" from the facts in the underlying suit, and therefore the underlying suit does not automatically confer federal jurisdiction. *Id.* Nonetheless, federal law applies to disputes over the enforcement or validity of settlement agreements when "the substantive rights and liabilities of the parties derive from federal law." *Mid-South Towing Co.*, 733 F.2d at 389 (applying federal law to determine the validity of an agreement to settle maritime law claims); *but see, Deville v. United States ex rel. Dep't of Veterans Affairs*, 202 F. App'x 761, 763 (5th Cir. 2006) ("The Fifth Circuit has not decided which law applies to govern the enforceability of the settlement of FTCA cases: federal common law or the law of the state where the alleged tort occurred.").

"Settlement agreements are highly favored in the law and will be upheld whenever possible." *Mass. Cas. Ins. Co. v. Forman*, 469 F.2d 259, 261 (5th Cir. 1972) (quoting *D. H. Overmyer Co. v. Loflin,* 440 F.2d 1213, 1215 (5th Cir. 1971)). Under both federal and Louisiana law, the party seeking to enforce an agreement bears the burden of establishing the existence of a compromise. *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 322 (5th Cir. 2003); *Brown v. Drillers, Inc.*, 630 So. 2d 741, 747 (La. 1994). If the moving party establishes that a compromise was agreed to, the party contesting the settlement bears the burden of demonstrating the invalidity of the agreement. *Id; see also Mid-South Towing Co.*, 733 F.2d at 392 ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity." (quoting *Callen v. Penn. R.R. Co.*, 332 U.S. 625, 630 (1948))).

III.    Analysis

    A.    **The Parties Formed a Compromise**

The parties entered into a binding agreement to settle this suit at the conclusion of the judicial settlement conference. Plaintiff, however, contends that they merely "agreed to agree."

(R. Doc. 60 at 1). Plaintiff asserts that there was no compromise because: (1) the agreement was not put into writing; (2) Plaintiff's attorney did not have settlement authority; and (3) the agreement does not cover all material terms. (*See id.*). Specifically, the agreement is incomplete because it does not provide for Plaintiff's reemployment with the LSP. (*See id.*). The Court expressly retained jurisdiction in its dismissal order, and Defendants seek to enforce the settlement agreement.

As a threshold matter, the parties assert that federal law governs whether they entered a valid compromise. (R. Docs. 59 at 2; 60 at 2). Generally, a compromise is a contract governed by state law, and suits to enforce compromises form independent causes of action typically heard in state court. *Kokkonen*, 511 U.S. at 381. Federal law, nonetheless, applies to substantive rights and liabilities derived from federal law. *Mid-South Towing Co.*, 733 F.2d at 389. The Fifth Circuit has applied federal law to disputes over contractual rights to a settlement founded upon federal law. *See, e.g., Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645 (5th Cir. 2018) (disputing the enforceability of an agreement under the Miller Act); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) (disputing whether Title VII requires that a settlement must be in writing); *Mid-South Towing Co.*, 733 F.2d at 389 (seeking to enforce a settlement under admiralty jurisdiction). The parties have not identified any substantive federal rights at issue beyond the underlying federal civil rights claims; however, some courts have looked to the underlying cause of action to determine the applicable law. *See, e.g., Rodgers v. Jefferson Par. Sheriff's Off.*, No. 15-2642, 2016 WL 4427210, at *2 (E.D. La. June 28, 2016), *report and recommendation adopted*, 2016 WL 4418959 (E.D. La. Aug. 19, 2016); *see also Glazer v. J.C. Bradford & Co.*, 616 F.2d 167, 169 (5th Cir. 1980) (applying state law to an action based upon diversity jurisdiction). Courts have even looked to both federal and state law to determine the

enforceability of a compromise when a Plaintiff asserted both federal and state causes of action. *See, e.g., Carlson v. Ackal*, No. 17-469, 2018 WL 4169135, at *4 (W.D. La. Aug. 29, 2018). Regardless of whether federal or state law applies here, the parties agreed to a compromise.

Under Louisiana law, settlement agreements, or compromises, are contracts "whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071. Essentially a compromise must contain a "(1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences." *Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co.*, 622 F.3d 384, 390 (5th Cir. 2010) (quoting *Klebanoff v. Haberle*, 978 So. 2d 598, 602 (La. Ct. App. 2nd Cir. 2008)). A compromise must be made in writing or in open court and capable of being transcribed from the record of the proceedings. La. Civ. Code art. 3072. Emails may qualify as signed writings. La. Rev. Stat. Ann. § 9:2607(c); *see also Preston Law Firm, L.L.C.*, 622 F.3d at 391. Moreover, the agreement does not need to be contained within a single document. *Felder v. Ga. Pac. Corp.*, 405 So. 2d 521, 523 (La. 1981). "Where two instruments, read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement has been perfected." *Klebanoff*, 978 So. 2d at 601-02.

Federal law governing settlement agreements applies the general common law principles of contracts. *See In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015). To form a settlement agreement, there must be an offer, an acceptance, consideration, the inclusion of all material or essential terms, and a meeting of the minds among the parties. *See id.* at 355-60. An offer and acceptance "is judged by the parties' overt acts and words, not by the subjective or secret intent of the [parties]." *Id.* at 355. For there to have been a meeting of the minds, the

parties must have "knowingly and voluntarily" entered into the agreement. *Bowers v. Abundant Home Health, L.L.C.*, 803 F. App'x 765, 767 (5th Cir. 2020). So long as these requirements have been met, "[f]ederal law does not require settlement agreements to be reduced to writing." *EEOC v. Philip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011).

Plaintiff agreed to a compromise following the judicial settlement conference. The parties made mutual concessions to resolve the litigation and affirmed their agreement before the Court. (*See* R. Doc. 40). Although Plaintiff now states that he was under duress, he concedes that he "did agree to the Settlement, even though he did not actually agree to the terms." (R. Doc. 52-2 at 5; *see also* R. Doc. 70 at 4 ("Mr. Cavalier caved and agreed to an oral version of the settlement even though he never really agreed either to the dollar figure or the non-economic issues.")). As purported evidence that Plaintiff never actually agreed to the compromise, Plaintiff cites to earlier communications with his attorney in which he stated that he would not agree to the proposed terms. (*See* R. Doc. 52-3). However, Plaintiff's prior statements do not negate that he expressly agreed to the terms during the settlement conference. Plaintiff's "reluctance… does not diminish the fact" that he agreed to the terms of the compromise. *Preston Law Firm, L.L.C.*, 622 F.3d at 391; *see also Klebanoff*, 978 So. 2d at 604 ("[R]eservations about the commitment ... [do] not alter the showing of consent and mutual concessions.").

The parties are bound by their compromise despite Plaintiff's contention that they only entered into an unenforceable, oral agreement. Under federal law, which Plaintiff states applies, settlement agreements do not need to be reduced to writing. *Philip Servs. Corp.*, 635 F.3d at 167. Louisiana, however, requires that compromises be made in writing or recited in open court. La. Civ. Code art. 3072; *Lavan v. Nowell*, 708 So. 2d 1052, 1052 (La. 1998). Although the judicial settlement conference was not put on the record in open court, the parties put their agreement

into writing. Immediately after the conference, the parties memorialized their agreement in an exchange of emails. (R. Doc. 56-2). The emails included all material terms of the compromise. (*See id.*). In Louisiana, emails may jointly qualify as a signed, written compromise. *Preston Law Firm, L.L.C.*, 622 F.3d at 391; *Klebanoff*, 978 So. 2d at 600-05. Fundamentally, the parties' email exchange "satisfied the two essential elements of the compromise: a mutual intent to end the litigation and reciprocal concessions." *Klebanoff*, 978 So. 2d at 604. Therefore, they combine to constitute a binding compromise.

Lastly, Plaintiff contends that the compromise failed to address all material terms. (*See* R. Doc. 60 at 2). Plaintiff states that the agreement is incomplete because it "did not include a provision by which he would be reemployed by the Louisiana State Police." (R. Doc. 70 at 2; *see also* R. Doc. 60 at 1-3). However, the compromise explicitly addressed his employment. Indeed, the negotiation and agreed upon terms almost exclusively dealt with the <u>ending</u> of Plaintiff's employment. Re-employment was never considered.

The parties' agreement, as set forth in their email exchange, stated that "(2) Mr. Cavalier resigns as of 1/31/22… (3) Mr. Cavalier is not eligible for rehire and will not seek reemployment with Department of Public Safety and Corrections." (R. Doc. 56-2 at 2). Plaintiff's regret that the agreement bars his reemployment with LSP does not mean that the agreement failed to address the issue of his future employment. Plaintiff simply is dissatisfied with the terms that he agreed to, and he is not disputing the scope of the agreement or the meaning of its terms. Plaintiff has not identified any other material or essential terms missing from the compromise. (*See* R. Docs. 52, 60, 70). Accordingly, no factual dispute exists that the parties entered into an enforceable compromise.

B. **Alleged Pressure to Settle Applied by Plaintiff's Attorney Does Not Constitute Duress Sufficient to Invalidate Agreement**

Having entered into a compromise, Plaintiff has not identified a sufficient basis to invalidate that agreement. A compromise may not be set aside absent a showing of fraud, mutual mistake, or other circumstance tainting its validity. *See Mid-South Towing Co.*, 733 F.2d at 392. Plaintiff asserts that he only agreed to the compromise under duress applied by his counsel. (R. Doc. 70). He claims that "[h]is counsel threatened to abandon him if he did not agree to the [compromise]," and he "knew he could not proceed alone and needed her." (*Id.*). Plaintiff did not identify another factual basis to invalidate the settlement.

Duress results when a person makes an improper threat that induces a party to agree and the person has no reasonable alternative. *Reimoneng v. Foti*, 72 F.3d 472, 477-78 (5th Cir. 1996). To taint the validity of a contract, duress must be of "such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation." *Wolf v. La. State Racing Comm'n,* 545 So. 2d 976, 980 (La. 1989). "[A] threat of doing a lawful act or a threat of exercising a right does not constitute duress." *Id.*

Plaintiff's allegations fail to rise to the level of duress. The statements by Plaintiff's attorney assessing the strength of his case and the merits of the proposed settlement do not constitute duress. Furthermore, counsel's warning that she would cease representing him if he chose not to accept the proposed settlement was not an improper threat. *See Macktal v. Sec'y of Labor*, 923 F.2d 1150,1157-58 (5th Cir. 1991) (finding that pressure exerted by attorneys on plaintiff to settle a case did not constitute duress); *Associated Estates Estates LLC v. BankAtlantic*, 164 A.3d 932 (D.C. 2017) (upholding a decision to enforce a settlement agreement despite "considerable pressure" from plaintiff's counsel to settle). Plaintiff's dissatisfaction with

the agreement does not invalidate it. In the absence of factual allegations, which if proven true could legally constitute duress, Plaintiff fails to meet his burden to rescind the agreement.

Relatedly, Plaintiff contends that his attorney ignored his wishes and lacked authority to settle the dispute. However, Plaintiff, and not his attorney, agreed to the compromise before the Court. Moreover, Plaintiff's approval of the terms of settlement in Court provided his counsel with the apparent authority to memorialize the compromise in writing. *See Preston Law Firm, L.L.C.*, 622 F.3d at 389 ("Under Louisiana law, a principal may be bound by the acts of an agent only if the agent has 'apparent authority' to bind the principal."). As Plaintiff has not identified any disputed issues of material fact affecting the validity of the agreement, the Court may enforce the compromise.

## IV. Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that the Court **GRANTS** Defendants' Motion to Enforce Settlement Agreement (R. Doc. 56) and **ORDERS** the parties to comply with the terms of their settlement agreement.

**IT IS FURTHER RECOMMENDED** that Intervenor's Motion to Deem Privilege Waived (R. Doc. 77) and Intervenor's Consent Motion for Leave to Review Exhibits In Camera (R. Doc. 78) be **DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on February 24, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**